UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ----------------------------------------------------------X<br>ARROWHEAD CAPITAL FINANCE, LTD.<br><br>*Plaintiff,*<br><br>-against-<br><br>SEVEN ARTS ENTERTAINMENT, INC. et al<br><br>*Defendant.*<br>----------------------------------------------------------X | Civil Action No. 14-CV-06512-KPF<br><br><br><br>**AFFIDAVIT OF KATE HOFFMAN** |

I, Kate Hoffman, declare under penalty of perjury as follows:

1. From June 19, 2013 until on or about August 22, 2014, I was the Chief Executive Officer of Defendant Seven Arts Entertainment Inc. ("SAE"). SAE is a Nevada corporation with its sole place of business being in Los Angeles, California. SAE owns 60% of the membership interests in Seven Arts Film Entertainment Louisiana LLC ("SAFELA"), which it acquired on June 30, 2012, and the remaining 40% of SAFELA's membership interests are owned by Palm Finance Corp., a former lender to SAE. SAFELA is a Louisiana limited liability company with its principal place of business being in Los Angeles, California and New Orleans, Louisiana. Peter Hoffman resigned as an office and director of SAE in June, 2013, resigned as a director and officer of Seven Arts Pictures plc ("PLC") in November, 2011, and was never an officer or director of SAFELA or Seven Arts Filmed Entertainment Limited ("SAFE").

2. The companies subject to the "Transaction Documents" described in Paragraph 4 below are PLC, SAFE and various inactive companies therein listed ("Inactive Companies"). PLC was the parent company of SAFE and the various Inactive Companies until on or about January 31, 2011.

3. SAE and PLC were both widely-held public companies throughout all relevant time periods appropriate with a separately appointed management and independent Board of Directors. Neither SAE nor SAFELA has a bank account, real estate or other property in New York or employees in New York, neither has otherwise engaged in a continuous and systematic course of business in New York and neither has any on-going presence in New York.

4. The Judgment dated September 12, 2012 at issue in the First Amended Complaint filed herein was based on a Senior Subordinated Promissory Note dated December 3, 2006 ("Note") and related Master Agreement of the same date ("Master Agreement") attached as Exhibits 3 and 4 to the Complaint, executed by PLC, SAFE and Inactive Companies. The Master Agreement provided for the assignment to Arrowhead's predecessor of "Pool Hall Loan Documents," "Deal Loan Documents," and "Noise Loan Documents" attached hereto as Exhibits "A," "B," and "C" hereto, together with Master Agreement and Note being collectively referred to as the "Transaction Documents."

5. Neither SAE nor SAFELA were in existence on the execution of the Transaction Documents, and neither was a party to the original action giving rise to the Judgment. SAE did not enter into business until January 31, 2011. SAFELA was not owned by SAE until July 1, 2012 and entered into no contracts with PLC or SAFE.

6. Neither SAE nor SAFE assumed any rights or obligations under or were an assignee of the Transaction Documents by reason of either the PLC Asset Transfer Agreement or the SAFE Asset Transfer Agreement described below. The Transaction Documents were not negotiated in New York, but rather with Arrowhead's predecessor which was located in Minneapolis. The principal negotiations all occurred in California or by telephone with Arrowhead's representatives in Minnesota. The Transaction Documents do not contemplate any performance in New York. New York was not a focal point or a center

of any activities whatsoever in connection with the Transaction Documents. Neither SAE nor SAFELA performed any actions in New York directly or on behalf of PLC or SAFE related in any manner to the Transaction Documents. No distribution agreements relating to the motion pictures subject to the Transaction Documents are negotiated or executed in New York, and no performance of any distribution function occurred in New York.

7. SAE acquired certain assets of PLC pursuant to an Asset Transfer Agreement dated as of July 1, 2010, amended on January 30, 2011 and August 31, 2011 ("PLC Asset Transaction Agreement") attached as Exhibit "D" hereto. In Paragraph 2.2 of the PLC Asset Transfer Agreement, the only debts for borrowed money assumed by SAE were those agreed in writing by SAE. SAE has never agreed in writing to assume any liability under the Transaction Documents.

8. PLC became subject to involuntary creditor liquidation in United Kingdom on November, 2011 which was recognized under Chapter 15 of the United States Bankruptcy Code on May 25, 2012, and In Re Seven Arts Pictures PLC, No. 12-11157 ("Eastern District of Louisiana, May 25, 2012"). The Order of Recognition in this proceeding and Order dated May 25, 2012 and the Order applying the Automatic Stay under the United States Bankruptcy Code to claims of transfer of liability dated July 30, 2012 are attached hereto as Exhibits "D" and "E" to SAE's Request For Judicial Notice filed herewith.

9. On or about January 1, 2012, SAE assumed certain obligations of SAFE in return for certain designated assets pursuant to an Asset Transfer Agreement of that date ("SAFE Asset Transfer Agreement") attached as Exhibit "F" hereto. SAFE became the subject of an involuntary creditor liquidator in the United Kingdom on November 19, 2013 and In Re Matter Seven Arts Filmed Entertainment Limited, No. 3158 in the Order attached hereto as Exhibit "G." In Paragraph 2.2 of the SAFE Asset Transfer Agreement, the only

debts for borrowed money assumed by SAE were those agreed in writing by SAE.  SAE has never agreed in writing to assume any liability under the Transaction Documents.

10. On or about October 1, 2013, SAE licensed distribution rights to thirteen pictures to SAFELA in a Distribution Agreement of that date ("Distribution Agreement") and that Distribution Agreement was accepted by SAE's principal creditors when it levied on SAE's motion picture rights as part of a creditor workout and business combination with an unrelated party, Sanwire Corporation, completed on August 29, 2014.  The Distribution Agreement is attached hereto as Exhibit "E-1."  The SEC Form 8-K describing the loan workout and business combinations regarding these transactions is attached hereto as Exhibit "E-2."  SAFELA has entered into no transactions with PLC or SAFE.

11. The Transaction Documents assumed that SAFE would deposit monies in a collection account established by Arrowhead's counsel with respect to certain motion pictures subject to the Transaction Documents.  SAE and SAFELA had no involvement whatsoever in any collection of monies or deposits in the collection account at any time and undertook no contacts with the state of New York with respect thereto.  No distribution activities were entered into with respect to the pictures in the state of New York.  The loans subject to the Transaction Documents were not made in New York.  No payments could, in fact, be payable to the collection account for the benefit of Arrowhead as it was a junior creditor.

12. SAFE and PLC remain in existence and are operated by liquidators appointed by the Official Receivers Office in the United Kingdom.  Shortly after the SAFE Asset Transfer Agreement was completed, SAFE terminated its entire accounting staff in London including one of its two managing directors, Elaine New and terminated the lease on its office in London, England. Shortly thereafter, prior to the liquidation of SAFE, SAFE's remaining

employee was also fired. Only I was then an officer of SAFE and I have since resigned. SAFE's physical assets are the property of the liquidator.

13. The only consideration paid by SAE to SAFE for the benefit of its creditors was assumption of specific indebtedness (not including the Transaction Documents), and there was no issue of stock of SAE to SAFE or its creditors. SAFE and PLC have retained substantial assets, including a claim for copyright infringement against ContentFilm and receivables with a full value, potentially totalling together in excess of $10,000,000.

14. PLC and SAFE were at all times public companies observing all corporate formalities under the laws of the United Kingdom. Both PLC and SAFE have separate corporate executives and maintain separate books and records. Neither PLC nor SAFE transferred monies for the benefit of SAE. SAE has not and cannot dominate either PLC or SAFE as both are subject to the control of liquidators at the present time, and SAE did not "dominate or control" SAFE in any greater manner than any subsidiary with separate management operating in a separate jurisdiction.

Executed under penalty of perjury in Milford, Connecticut on October 20, 2014.

_____
Kate Hoffman

Sworn to and Subscribed before me.
this 20th day of Oct. 2014

_____
JOYCE M. NASTU
NOTARY PUBLIC
MY COMMISSION EXPIRES JUNE 30, 2015