UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                         :

ARROWHEAD CAPITAL FINANCE, LTD.,     :
                         :

                Plaintiff,    :

              v.           :

SEVEN ARTS ENTERTAINMENT, INC., and  :
SEVEN ARTS FILMED ENTERTAINMENT     :
LOUISIANA LLC,                          :
                         :

              Defendants.  :
                         :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 2, 2017

14 Civ. 6512 (KPF)

<u>ORDER</u>

KATHERINE POLK FAILLA, District Judge:

## BACKGROUND

In an Opinion and Order issued on September 16, 2016 (the "September 16 Opinion"), this Court resolved the parties' cross-motions for summary judgment by granting in part and denying in part Plaintiff's motion and denying in full Defendants' motion; the Court also imposed sanctions on both Defendants and their counsel, Raymond J. Markovich, Esq., for bad-faith conduct during this litigation, including obstructive and vexatious conduct during discovery. (Dkt. #143). *See Arrowhead Capital Fin., Ltd.* v. *Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2016 WL 4991623, at *18-24 (S.D.N.Y. Sept. 16, 2016). Of significance to the instant Order, the Court found that a modest sanction — a percentage of the costs incurred by Plaintiff in filing its reply brief in further support of its motion for summary judgment — should be imposed on defense counsel because he had acted in bad faith in (i)

representing to the Court that the CEO and CFO of Defendant Seven Arts Entertainment, Inc. ("SAE") "lacked any information or knowledge related to the subject matter of this dispute" (Dkt. #143 at 52 (citing Dkt. #56)), and (ii) raising specious evidentiary objections to virtually every paragraph in Plaintiff's Local Rule 56.1 statement (*id.*). *Arrowhead Capital Fin.*, 2016 WL 4991623, at *23.

In a letter filed on September 20, 2016, Mr. Markovich raised several issues that he believed the Court had overlooked in imposing sanctions on him personally. (Dkt. #144). *See* Local Rule 6.3 (addressing motions for reconsideration or reargument). *See generally Ruiz* v. *Citibank, N.A.*, No. 10 Civ. 5950 (KPF) (RLE), 2015 WL 4629444, at *1 (S.D.N.Y. Aug. 4, 2015) (noting that movant seeking reconsideration under Local Rule 6.3 must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court" (internal quotation marks and citation omitted)), *aff'd*, No. 15-3941-cv, 2017 WL 1379369 (2d Cir. Apr. 14, 2017) (summary order). The Court had not overlooked the facts called to its attention, but considered more broadly whether it had erred in imposing sanctions against Mr. Markovich without giving him appropriate notice of its intention and an opportunity to respond. *See Wilson* v. *Citigroup, N.A.*, 702 F.3d 720, 725 (2d Cir. 2012) ("An attorney whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be

forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges." (quoting *Sakon* v. *Andreo*, 119 F.3d 109, 114 (2d Cir. 1997)). The Court concluded that it had provided insufficient notice to the parties, and sought supplemental briefing. (*See* Dkt. #149 (affirmation of Mr. Markovich), 154 (order permitting supplemental briefing from both sides concerning the propriety of imposing sanctions on Mr. Markovich); *see also* Dkt. #157 at 22-31 (transcript of conference held on November 2, 2016)).[1]

Mr. Markovich filed a five-page supplemental brief on December 2, 2016. (Dkt. #160). Previously, on October 12, 2016, he had filed an affirmation explaining certain of his actions in this litigation, including those underlying the Court's proposed sanctions. (Dkt. #149). Plaintiff filed a supplemental memorandum in opposition, along with an affidavit from Plaintiff's counsel attaching various exhibits, on December 12, 2016. (Dkt. #162, 162-1). In these submissions, Plaintiff requested that the Court adhere to its original decision to impose sanctions on Mr. Markovich. (Dkt. #162, 162-1).

On February 13, 2017, Mr. Markovich moved to strike Plaintiff's opposition and supporting documentation. (Dkt. #180). Plaintiff opposed the

---

[1] The Court had no similar concerns about its imposition of sanctions on Defendants for their many and varied discovery violations in this litigation. Prior to the November 2, 2016 conference, the Court had obtained a submission from Plaintiff's counsel concerning the relevant fees and costs (Dkt. #146), to which Defendants had responded (Dkt. #149). At the November 2 conference, the Court heard further argument from the parties concerning Plaintiff's application for fees and costs against Defendants, and ultimately awarded Plaintiff attorney's fees in the amount of $13,675, and costs in the amount of $1,997.82, for a total award of $15,672.82. (Dkt. #157 at 34-37; *see also* Dkt. #153 (order memorializing award)).

motion to strike in submissions dated March 10, 2017 (Dkt. #186, 186-1); and

Mr. Markovich filed a brief and an affirmation in reply on March 25, 2017 (Dkt.

#189, 190).[2]

## ANALYSIS

### A.    Applicable Law

The Court believes that, other than the notice issue identified above, the

legal framework for the imposition of sanctions is accurately set forth in pages

39 through 41 and 51 through 52 of the September 16 Opinion (Dkt. #143).

*See Arrowhead Capital Fin.*, 2016 WL 4991623, at *18-19, *23.  Generally

speaking, "[i]mposition of sanctions under a court's inherent powers requires a

specific finding that an attorney acted in bad faith," and such sanctions "are

appropriate only if there is clear evidence that the conduct at issue is

[i] entirely without color and [ii] motivated by improper purposes." *Wolters*

*Kluwer Fin. Servs., Inc.* v. *Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009); *but see*

*United States* v. *Seltzer*, 227 F.3d 36, 41 (2d Cir. 2000) ("[T]he inherent power

of the district court also includes the power to police the conduct of attorneys

as officers of the court, and to sanction attorneys for conduct not inherent to

---

[2]    The Court disagrees with Mr. Markovich that Plaintiff and its counsel have acted improperly in citing to the Court's September 16 Opinion in the supplemental filings. (*See, e.g.*, Dkt. #180, 189).  Contrary to Mr. Markovich's suggestions, the Court has never withdrawn that Opinion in its entirety.  Instead, the Court recognized and sought to remedy the fact that it had not previously provided notice and an opportunity to be heard of its intention to impose sanctions against Mr. Markovich.  While the focus of the instant proceeding is on affording Mr. Markovich an opportunity to provide information to the Court concerning the conduct that is the basis for the contemplated sanctions, it is entirely appropriate for Plaintiff to call contrary information to the Court's attention in order to argue that the Court's earlier factual findings and legal conclusions regarding Mr. Markovich were in fact correct, and that sanctions against him are still warranted.  The Court accordingly denies Mr. Markovich's requests to strike Plaintiff's opposition and its supporting documentation.

client representation, such as, violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith."). Similarly, before imposing sanctions under 28 U.S.C. § 1927, a court "must find clear evidence that [i] the offending party's claims were entirely meritless and [ii] the party acted for improper purposes." *Revson* v. *Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (internal quotation mark omitted) (quoting *Agee* v. *Paramount Commc'ns Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)). *See generally Sorenson* v. *Wolfson,* No. 16-1224, 2017 WL 1043073, at *3 (2d Cir. Mar. 16, 2017) (summary order) (discussing sanctions imposed under the inherent powers doctrine and 28 U.S.C. § 1927).

Mr. Markovich argues that the Court's authority in this regard is circumscribed by Rule 11 of the Federal Rules of Civil Procedure. (*See, e.g.*, Dkt. #160 at 1-2). The Court disagrees. While it is true that Rule 11 can itself be a basis for the imposition of sanctions on a litigant or its counsel, the rule does not otherwise restrict a court's inherent power to impose sanctions. *See DLC Mgmt. Corp.* v. *Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) ("[T]he fact that there may be a statute or rule which provides a mechanism for imposing sanctions of a particular variety for a specific type of abuse does not limit a court's inherent power to fashion sanctions, even in situations similar or identical to those contemplated by the statute or rule."); *see also Sorenson*, 2017 WL 1043073, at *1-3. Similarly, the Court is not dependent on a prior invocation by Plaintiff of the safe harbor provision set forth in Rule 11(c)(2).

*See* Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.").

**B.      The Court's Reconsideration of Sanctions Against Mr. Markovich**

**1.      Counsel's Statements Concerning SAE's CEO and CFO**

In his supplemental submissions, Mr. Markovich first addressed his representation to the Court that SAE CEO Richard Bjorklund and CFO Rachel Boulds lacked "any information or knowledge related to the subject matter of this dispute." (Dkt. #160 at 1; *see also, e.g.*, Dkt. #149 at ¶ 9; Dkt. #160 at 2-4). In brief, Mr. Markovich explained that (i) he has never met either officer personally; (ii) he had spoken with each officer one or more times before making his representation to the Court; (iii) each officer had told him during those communications that he or she had no personal knowledge of any relevant facts; (iv) the tenure of each officer at SAE had post-dated the transactions underlying the instant litigation; (v) he had previously notified the Court of Defendants' intention to request a protective order based on these officers' lack of relevant knowledge; and (vi) he had let each officer speak with Plaintiff's counsel to advise him of that lack of knowledge. (Dkt. #149 at ¶ 9; Dkt. #160 at 2-4).

These explanations have little traction. As the Court observed in the September 16 Opinion (*see* Dkt. #143 at 52), "[n]o attorney with knowledge of the allegations in this case could believe this representation." (*Id.*). *Arrowhead*

*Capital Fin.*, 2016 WL 4991623, at *23. While Mr. Markovich has frequently argued that the case is limited to a December 2006 subordinated note transaction that went badly for Plaintiff, the evidence in the case — which Plaintiff has gathered, of necessity, from sources other than Defendants — confirms that Plaintiff has been the victim of a multi-year shell game of transactions among Peter Hoffman-controlled entities, including SAE. The Court finds it inconceivable that anyone (particular the company's counsel) could believe that the CEO of a company would have no knowledge of the corporate structure of that company or the consequences of recent company transactions. The Court finds it similarly inconceivable that counsel could believe that the CFO of a company would have no knowledge of the financial books and records of that company.

As noted by Plaintiff (*see* Dkt. #162 at 10-12), the Court's common-sense conclusions are further supported by SAE's filings with the U.S. Securities and Exchange Commission, signed by Mr. Bjorklund, which make plain that he and Ms. Boulds had relevant and responsive information and documents concerning SAE's sources of revenue, its ownership interests in Seven Arts Filmed Entertainment Louisiana LLC ("SAFELA"), and the latter company's film library, and its corporate books and records. (*Id.*). Similarly, the transcript of Kate Hoffman's deposition confirms Ms. Boulds's contemporaneous knowledge of, among other things, revenues derived from the SAFELA film library that guaranteed Plaintiff's loan. (*Id.* at 11). Mr. Markovich protests that Ms. Hoffman's deposition testimony post-dated his representations to the Court.

(Dkt. #189 at 2). This is true, but as counsel for Defendants, Mr. Markovich must have discussed with Ms. Hoffman the nature of her interactions with SAE's officers before making such definitive representations to the Court about their lack of knowledge.

Similarly, the Court does not understand what significance it should have ascribed to Mr. Markovich's reference to Defendants' intention to request a protective order. (*See* Dkt. #149 at ¶ 9). After all, no such request was ever submitted; the Court reasonably interpreted counsel's change of plans as a recognition that no basis for a protective order existed.

Even if it were true that Mr. Markovich sincerely believed that neither witness had any relevant information, his representation to the Court regarding their lack of knowledge would still amount to bad faith. Mr. Markovich asserts that he has been providing legal services to Defendants without payment for his fees. (*See, e.g.*, Dkt. #189, 190). There is nothing inherently wrong with counsel's decision to proceed in that manner, but the Court is concerned by other statements by Mr. Markovich suggesting that he has cut corners on account of this fact. (*See, e.g.*, Dkt. #189 at 2 ("Did [Plaintiff's counsel], likely on contingency, expect a pro bono attorney to fly to London at his own cost (since his client has no money) to be present at the deposition of Kate Hoffman concerning insolvent companies?")).

Whatever the financial arrangement Mr. Markovich reached in this case, he retained the obligation to represent his clients competently. *Cf. Chun Jie Yin* v. *Kim*, No. 07 Civ. 1236 (DLI) (JO), 2008 WL 906736, at *5 n.3 (E.D.N.Y.

Apr. 1, 2008) ("Yin's attorneys in this matter donated a significant amount of time and made substantial efforts on Yin's behalf on a *pro bono* basis. In doing so they acted admirably and upheld the finest tradition of our profession. Nevertheless, it should go without saying that any attorney who makes the salutary decision to undertake such a representation owes her client the same duty of zealous advocacy that she owes to a paying client."). Too often it has appeared to this Court that Mr. Markovich served as a mere amanuensis through whom disbarred attorney Peter Hoffman has presented *his* arguments. Put somewhat differently, Mr. Markovich's paltry efforts to investigate the knowledge (or lack thereof) of SAE's then-current CEO and CFO are of a piece with the strikingly casual approach he has taken to representing Defendants in this case, even in the face of troubling litigation conduct by Peter and Kate Hoffman. His willingness to accept and repeat the representations of his clients, even when they are belied by the record evidence, is itself evidence of his bad faith. *Cf. Zubulake* v. *UBS Warburg LLC*, 229 F.R.D. 422, 424 (S.D.N.Y. 2004) ("Lawyers and their clients need to communicate clearly and effectively with one another to ensure that litigation proceeds efficiently. When communication between counsel and client breaks down, conversation becomes 'just crossfire,' and there are usually casualties." (citation omitted)). The Court will not reconsider its finding of bad faith as to the Bjorklund and Boulds representation.

## 2. The Objections to Plaintiff's Rule 56.1 Statement

Separately, Mr. Markovich sought to justify his scattershot approach to evidentiary objections to Plaintiff's proffered statements of undisputed fact under Local Rule 56.1. (*See, e.g.*, Dkt. #149 at ¶ 10; Dkt. #160 at 4). Broadly speaking, he chides Plaintiff's counsel for submitting multiple affidavits from which the paragraphs in Plaintiff's 56.1 statement are sourced, and for submitting filings that were rejected by the Court's ECF system, necessitating resubmission. (Dkt. #149 at ¶ 10). The Court acknowledges that Plaintiff's counsel has a mixed track record with filing documents on ECF. However, Mr. Markovich did not suggest (nor did the Court find) that he was unable to access Plaintiff's 56.1 statement. There is only one version of that document, and any difficulties Plaintiff had in filing the statement would not have caused Defendants and their counsel difficulties in responding to it; ECF hiccups are, for example, no basis for a best-evidence or relevance objection.

Mr. Markovich further explained that his best evidence objection was advanced in an excess of caution, addressing not the underlying documents cited in Plaintiff's 56.1 statement, but the references by certain affiants to the contents of those documents, while his relevance objection reflected Defendants' belief that Plaintiff's arguments were an improper constructive amendment of the First Amended Complaint. (Dkt. #160 at 4). These explanations do not aid Mr. Markovich's cause. No effort was made before Mr. Markovich's supplemental submission — for example, in Defendants' opposition papers to Plaintiff's summary judgment motion — to explain these

terse objections to Plaintiff or the Court. They were simply words on a page, and they were words that failed to comply with letter or spirit of Local Rule 56.1. Again, the Court adheres to its earlier finding.

But while Mr. Markovich has lost the battle relating to his good faith, he may have won the war, inasmuch as the Court has reconsidered its decision to impose sanctions on him directly. With respect to the Bjorklund/Boulds representation, the Court cannot say that it had an impact on Plaintiff's reply submission that would warrant a partial assessment of the costs of that submission. The real place where the cost of this conduct was felt was in discovery. The Court finds it difficult to disentangle the problems for Plaintiff and the Court that were caused by Mr. Markovich's conduct from those caused by the obstructionist conduct of his clients, and it further believes that those problems were adequately addressed in the prior sanctions order imposed on Defendants. Similarly, and after reflection, the Court believes that the damage done by Mr. Markovich's improper evidentiary objections was felt most by Defendants themselves, since the Court was obligated by the Local Rule to credit most if not all of Plaintiff's statements. *See* Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."). The Court concludes that no additional sanctions are necessary or appropriate.

**CONCLUSION**

For the reasons set forth in the remainder of this Order, the Court interprets Mr. Markovich's September 20, 2016 submission (Dkt. #144) as a motion for reconsideration, grants the motion in part, and withdraws that portion of the September 16 Opinion that imposed sanctions on Mr. Markovich personally.

SO ORDERED.

Dated:   May 2, 2017
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge