UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                       :

ARROWHEAD CAPITAL FINANCE, LTD.,   :
                       :

             Plaintiff,  :

                       :

            v.          :

                       :

SEVEN ARTS ENTERTAINMENT, INC., and :
SEVEN ARTS FILMED ENTERTAINMENT     
LOUISIANA LLC,               :

                       :

            Defendants. :

                       :

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 2, 2017

14 Civ. 6512 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

On September 16, 2016, the Court issued an Opinion and Order (the "September 16 Opinion") granting in part and denying in part Plaintiff's motion for summary judgment, denying Defendants' cross-motion for summary judgment, and imposing sanctions on Defendants and their counsel. Specifically, the Court found that Plaintiff was entitled to a declaratory judgment that Defendant Seven Arts Entertainment, Inc. ("SAE") is liable to the same extent as Seven Arts Filmed Entertainment Limited ("SAFE") on the note and the state-court judgment that are discussed in that opinion. The Court denied Plaintiff's summary judgment motion with regard to Defendant Seven Arts Entertainment Louisiana, LLC ("SAFELA").

Plaintiff moved subsequently for the turnover, attachment, and restraint of SAE's property. When Defendants failed to fulfill their pretrial discovery obligations, Plaintiff also moved to strike Defendants' Answers and to enter the

judgment sought in Plaintiff's First Amended Complaint (the "Complaint").  For

the reasons set forth in the remainder of this Opinion, Plaintiff's motion to

strike Defendants' Answers and to enter judgment is granted in part and

denied in part.  The Court will also impose monetary sanctions for Defendants'

interminable misconduct.  Plaintiff's motion for turnover, attachment, and

restraint is denied without prejudice to its renewal.

## BACKGROUND[1]

The Court presumes familiarity with the factual background of this

litigation, which was described in detail in the Court's September 16 Opinion.

(Dkt. #143).  *See Arrowhead Capital Fin., Ltd.* v. *Seven Arts Entm't, Inc.*, No. 14

Civ. 6512 (KPF), 2016 WL 4991623, at *1-9 (S.D.N.Y. Sept. 16, 2016).  Thus,

the Court here focuses its attention on the procedural posture of the case.

## A.    The Pre-Summary-Judgment Discovery Disputes and Attendant Proceedings

Plaintiff first brought this action in New York State Supreme Court on

July 18, 2014.  (Dkt. #1, Ex. A).  The case was removed to this Court on

---

[1]    The facts in this Opinion are drawn from the parties' submissions in connection with each of Plaintiff's instant motions, as well as submissions filed in connection with their prior cross-motions for summary judgment.  For convenience, the Court will refer to Plaintiff's Memorandum of Law in Support of Its Motion for Turnover and Attachment of Assets of, and Related Relief Against, Defendants SAE and SAFE as "Pl. Turnover Br." (Dkt. #166), Defendants' Memorandum in Opposition thereto as "Def. Turnover Opp." (Dkt. #168), and Plaintiff's Reply Memorandum as "Pl. Turnover Reply" (Dkt. #169).  The Court will refer to Plaintiff's Memorandum of Law in Support of Its Motion to Strike the Answers of, and for Judgment Against, Defendants SAE and SAFELA, as "Pl. Str. Br." (Dkt. #177), Defendants' Memorandum in Opposition thereto as "Def. Str. Opp." (Dkt. #180), and Plaintiff's Reply as "Pl. Str. Reply" (Dkt. #193).  Defendants' Motion to Strike Plaintiff's motion for attachment and its supporting documents will be referred to as "Def. Str. Br." (Dkt. #180), Plaintiff's Memorandum in Opposition thereto as "Pl. Str. Opp." (Dkt. #186), and Defendants' Reply as "Def. Str. Reply" (Dkt. #191).

August 14, 2014.  (Dkt. #1).  After the Court denied Defendants' motion to dismiss Plaintiff's Amended Complaint (Dkt. #44), the Court entered a case management plan setting forth a discovery schedule on July 6, 2015 (Dkt. #47).

Plaintiff first raised the issue of Defendants' misconduct during discovery in a letter dated September 21, 2015.  (Dkt. #55).  Plaintiff claimed that Defendants had (i) made untimely and improper objections to Plaintiff's discovery requests, (ii) "[p]uff[ed] up" their document production with non-responsive documents, (iii) refused to produce responsive documents, including the bank records of the Seven Arts entities, and (iv) provided Plaintiff with interrogatory responses deficient in several respects.  (*Id.*; *see also* Dkt. #143 at 10-11).  *See Arrowhead Capital Fin.*, 2016 WL 4991623, at *5.  The Court held a conference to discuss these issues on October 6, 2016, at which the Court expressed the distress caused by Defendants' failure to produce documents that should have been within their possession or control.  (Dkt. #67).  The Court directed Defendants to produce these documents, which included, *inter alia*, bank statements, updated sales histories, and distribution reports for six of Defendants' films.  (*Id.*).  The Court also requested that Plaintiff's counsel submit a complete list of *all* outstanding documents (*id.*), which list counsel provided to the Court on October 8, 2015 (the "October 2015 List").  (Dkt. #61).  The Court endorsed the October 2015 List in its entirety and ordered Defendants to produce the documents enumerated thereon by October 16,

2015, so that they could be used in connection with previously scheduled depositions. (Dkt. #62).

At a second conference on November 12, 2015, which was occasioned primarily by Defendants' failure to produce witnesses for those depositions, the Court noted that Defendants still had failed to produce the documents on the October 2015 List. (Dkt. #89). The Court suspected that Defendants' principal, Peter Hoffman, had violated the Court's discovery orders, and scheduled a contempt hearing to determine whether this was the case. (*Id.*).

The hearing was held on December 15, 2015 (the "December 15 Hearing"). (Dkt. #94). For the reasons explained in the September 16 Opinion, the Court was not persuaded by Hoffman's "laundry list of excuses for the deficiencies in Defendants' document production." (Dkt. #143 at 45). *Arrowhead Capital Fin.*, 2016 WL 4991623, at *20. Rather, "the Court was left with the distinct impression that Mr. Hoffman was making it up as he went along in order to conceal his true motive: shielding assets, and the information relating to those assets, from Defendants' creditors, including Plaintiff in this litigation." (*Id.*). *Id.* At the hearing, the Court reserved decision on the propriety of sanctions (Dkt. #94), but again ordered that (i) Plaintiff's counsel identify a list of outstanding discovery by January 8, 2016, and (ii) Defendants produce the requested discovery by January 29, 2016, absent a specific and sufficient explanation for Defendants' failure to do so. (Dkt. #91).

Again, however, on February 20, 2016, Plaintiff advised the Court that Defendants had failed to produce the requisite discovery. (Dkt. #129).

Specifically, Plaintiff advised the Court that Defendants "(i) on the one hand, have withheld and failed to produce those accountings, bank statements, participation statements and other documents they admit were held up to and during 2015 on (among other things) their Zed One computer system" while "(ii) on the other hand, [engaging] in classic spoliation of those documents and that evidence, as they now purport to no longer be able to access and produce those accountings, bank statements, participation statements and other documents." (*Id.*). Plaintiff renewed its request that the Court sanction Defendants based on their continued failure to produce evidence. (*Id.*).

In the September 16 Opinion, the Court sanctioned Defendants for their conduct before and at the December 15 Hearing. (Dkt. #143 at 17 n.5, 46-51). *See Arrowhead Capital Fin.*, 2016 WL 4991623, at *8 n.5, *18-23. Utilizing its authority under Federal Rule of Civil Procedure 37, the Court (i) precluded Defendants from contesting the issue of personal jurisdiction, because "Defendants' persistent violations of the Court's discovery orders prevented Plaintiff from obtaining evidence that could be used to prove its jurisdictional allegations"; (ii) ordered Defendants to pay the attorney's fees that Plaintiff incurred as a result of Defendants' dilatory conduct in discovery; (iii) ordered Defendants to retain second outside counsel "to do a thorough review of Defendants' files and determine whether Defendants possess additional

discoverable information," and (iv) found that Hoffman was in contempt of Court. (*Id.* at 46-51).[2]  *Arrowhead Capital Fin.*, 2016 WL 4991623, at *18-23.

## B.    The Post-Summary-Judgment Discovery Disputes and Instant Motions

A conference was held on November 2, 2016, pursuant to which the Court awarded $15,672.82 in attorney's fees and costs against Defendants for the conduct sanctioned in the September 16 Opinion.  (Dkt. #153, 157).  The possibility of an order of attachment was also discussed (Dkt. #157), and the parties were directed to advise the Court of their positions regarding such an Order following the conference, on or before November 11, 2016.  (Dkt. #154). A bench trial was set to begin on March 6, 2017.

On November 11, 2016, the parties advised the Court that Defendants refused to "voluntarily agree to an order of attachment prior to final judgment." (Dkt. #155).  Defendants committed to deliver to Plaintiff by November 21, 2016: (i) SAFELA's operating agreement; (ii) confirmation that the Multi-Picture Distribution Agreement dated October 1, 2013, between SAE and SAFELA had not been amended or assigned; (iii) confirmation that SAE's 4,500,000 shares of The Movie Studio Inc. had not been

> pledged, hypothecated, sold, or transferred[,] that there is no agreement in effect relating to or which may affect or restrict sale or transfer of those shares; that there is no restriction on sale or other transfer of any of those

---

[2]    The Court also imposed a modest sanction on Defense counsel.  (Dkt. #143 at 51-53). *See Arrowhead Capital Fin., Ltd.* v. *Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2016 WL 4991623, at *23-24 (S.D.N.Y. Sept. 16, 2016).  However, in its Opinion dated May 2, 2017, the Court reconsidered that portion of its opinion, ultimately declining to impose sanctions on counsel directly.  (Dkt. #194).

shares ... [,] and that SAE has possession of the stock
certificate evidencing those shares; and

(iv) documents establishing that The Movie Studio Inc. "has no rights, and thus

no membership or other ownership interests in or to SAFELA[,] nor any right to

operate SAFELA[,] nor any ownership, distribution, or other rights in or with

respect to the 'Arrowhead Films,' ... and related rights and proceeds thereof."

(*Id.*).  The Court endorsed this production deadline, and set a briefing schedule

for Plaintiff's contemplated motion for an order of attachment.  (Dkt. #156).

Plaintiff filed its motion on December 1, 2016 (Dkt. #159, 165-67); Defendants

filed their opposition on December 2, 2016 (Dkt. #160, 168); and Plaintiff filed

its reply on December 31, 2016 (Dkt. #169-70).

While this motion was pending and the March trial date drawing near, on

January 2, 2017, Plaintiff filed a letter (i) advising the Court of Defendants'

"continuing disobedience" with regard to the Court's discovery and sanctions

orders, and "recent ongoing refusal to provide proper signed and sworn

responses to [Plaintiff's] discovery requests," and (ii) requesting leave to move

under Rule 37 to strike Defendant SAFELA's answer and enter judgment

against it.  (Dkt. #171).  Plaintiff advised the Court that Defendant had not

complied with the Court's directive in the September 16 Opinion that

Defendants engage separate discovery counsel.  (*Id.*).  Additionally, Plaintiff

indicated that Defendants had failed to provide Plaintiff with the proper pretrial

discovery that it needed.  Plaintiff alleged it had been "denied proper, sworn

information and documentation as to (among other things) SAFELA's

management, film distribution, business, collections, bank accounts, financial

statements, tax returns, payments to or for Peter Hoffman and to his daughter Kate Hoffman, and otherwise." (*Id.*).

The Court discussed these disputes at a telephonic conference on January 18, 2017. (*See* Dkt. #173). The Court adjourned the March 6, 2017 trial, determining that it could not go forward in light of Defendants' failure to produce the requisite discovery, and set a briefing schedule for Plaintiff's contemplated Rule 37 motion. (*Id.*). Plaintiff filed its Motion to Strike the Answers of SAE and SAFELA and to Enter Judgment for Plaintiff on February 13, 2017. (Dkt. #176-78). Defendants filed their opposition on March 10, 2017 (Dkt. #187-88) and Plaintiff filed its reply on March 25, 2017 (Dkt. #193).

## DISCUSSION

### A. Plaintiff's Rule 37 Motion to Strike SAFELA's Answer and Enter Judgment in Plaintiff's Favor Is Granted

#### 1. Applicable Law

Federal Rule of Civil Procedure 37 provides that where "a party or a party's officer, director, or managing agent ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders," which may include, among other things, orders "striking pleadings in whole or in part; ... dismissing the action or proceeding in whole or in part; [or] rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A); *see also* Fed. R. Civ. P. 16(f)(1)(C) (authorizing the award of sanctions, including those sanctions provided in Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii), where a party or its attorney "fails to obey a scheduling or other pretrial order"). "[I]nstead of or in addition to" such just orders, "the court *must* order

the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). The Second Circuit has deemed "certain Rule 37 remedies," including "dismissing a complaint or entering  judgment against a defendant ... severe sanctions," but allowed that "they may be appropriate in 'extreme situations,' as 'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party." *Guggenheim Capital, LLC* v. *Birnbaum*, 722 F.3d 444, 450-51 (2d Cir. 2013) (quoting *Bobal* v. *Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)); *accord, e.g.*, *Bhagwanani* v. *Brown*, 665 F. App'x 41, 44 (2d Cir. 2016) (summary order) (affirming conclusion that dismissal of plaintiff's complaint was permissible sanction for failure to comply with discovery orders); *Roberts* v. *Bennaceur*, 658 F. App'x 611, 614 (2d Cir. 2016) (summary order) (affirming entry of default judgment "as a discovery sanction against [d]efendants after two years of their repeated defiance of court orders").

Several considerations inform a court's decision to impose sanctions under Rule 37, including: "'[i] the willfulness of the non-compliant party; [ii] the efficacy of lesser sanctions; [iii] the duration of the noncompliance; and [iv] whether the non-compliant party had been warned' that noncompliance would be sanctioned." *Guggenheim Capital*, 722 F.3d at 451 (quoting *Agiwal* v.

*Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (per curiam)).  The

Court will consider these factors in turn in the section that follows.[3]

### 2.    Analysis

In the September 16 Opinion, the Court sanctioned Defendants for their

conduct up to and at the December 15 Hearing.  (Dkt. #143 at 17 n.5, 46-51).

*See Arrowhead Capital Fin.*, 2016 WL 4991623, at *8 n.5, *18-23.  The Court

therefore focuses here on Defendants' conduct subsequent to that hearing.[4]

And for the reasons set out below, the Court finds that (i) Defendants' non-

---

[3]    Though Plaintiff has only moved for sanctions under Rule 37, the Court notes that it also possesses inherent power to punish for contempt of its orders.  *See Goodyear Tire & Rubber Co.* v. *Haeger*, 581 U.S. ___, 137 S.Ct. 1178, 1186 (Apr. 18, 2017); *see also Ransmeier* v. *Mariani*, 718 F.3d 64, 68 (2d Cir. 2013); *Revson* v. *Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) ("The court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" (quoting *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 44 (1991))).  This power persists even where bad-faith conduct could also be sanctioned by the Federal Rules or by statute. *See Chambers*, 501 U.S. at 50 ("[I]f in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."); *see also Residential Funding Corp.* v. *DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002) ("Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs.").  The Court notes also that other Courts entering default judgment have done so pursuant to their authority under Federal Rule of Civil Procedure 55, in addition to Rule 37.  *See Guggenheim Capital, LLC* v. *Birnbaum*, 722 F.3d 444, 450 n.6, 454-57 (2d Cir. 2013).  The Court need not exercise these additional powers here, however, because the parties have not asked it to and the Court's authority under Rule 37 alone affords an adequate basis for sanctions.

[4]    Defendants have argued that Plaintiff seeks to impose a "'double sanction' for prior alleged discovery infractions." (Def. Str. Opp. 4).  Defendants reason that because "this Court has already sanctioned SAE and SAFELA for ... [their] failure to properly respond to prior discovery requests ... SAFELA should not be sanctioned twice for the same discovery issues." (*Id.* at 2).  However, the September 16 Opinion only sanctioned Defendants for their conduct up to and at the December 15 Hearing.  (Dkt. #143 at 17 n.5, 46-51).  *See Arrowhead Capital Fin.*, 2016 WL 4991623, at *8 n.5, *18-23.  This Opinion sanctions Defendants for their misconduct *since* December 15, 2015.  To the extent that it considers the noncompliance for which Defendants were already sanctioned, the Court merely does so to emphasize the egregiousness of Defendants' subsequent misconduct.  The Court does not here sanction Defendants for any conduct already sanctioned.

compliance with its orders was willful; (ii) lesser sanctions have failed to compel Defendants' compliance; (iii) Defendants were noncompliant for years preceding the September 16 Opinion, and their noncompliance has continued for over six months since that Opinion's issuance; and (iv) the Court repeatedly has warned Defendants regarding the possible imposition of sanctions, including specifically the possibility of a default judgment. Therefore, the Court grants Plaintiff's Rule 37 motion to strike SAFELA's answer and enter a default judgment against that entity.[5]

### a. Defendants' Willful Non-Compliance

This Court is astounded, though perhaps it ought not to be, to find itself once more in the position of sanctioning Defendants for failing to comply with its direct orders. Indeed, to date, Defendants have failed to produce the very discovery that Defendants' prior failure to produce, in contravention of prior orders, occasioned this Court's imposition of sanctions in the September 16 Opinion. For example: The Court ordered Defendants to produce their complete bank records on the October 2015 list (Dkt. #62), which records the Court had also directed Defendants to produce at the October 6, 2015 conference (Dkt. #67). As of the November 12, 2015 Conference, and as of the December 15 Hearing, *and* as of Plaintiff's February 20, 2016 letter, these records still had not been produced. (Dkt. #89, 91, 94, 129). Defendants were

---

[5]     Plaintiff has also moved to strike the answer of SAE and to grant defendant judgment against that entity. (Pl. Str. Br. 1). However, because the Court has already entered summary judgment against SAE in the September 16 Opinion, Plaintiff's motion with regard to SAE is denied as moot.

sanctioned for failing to produce these records in the November 2016 Opinion, but *still* Defendants persist in their noncompliance. As of the date of Plaintiff's last filing in this case, Defendants had not produced these records. (*See* Dkt. #193). The Court has no reason to believe they have been produced since.

The Court focuses on the example of Defendants' bank records because it lays plain the willful nature of Defendants' noncompliance. Indeed, the Court discussed this very aspect of Defendants' noncompliance with Defendants' counsel as early as October 6, 2015: At the conference held on that date, mindful that any holder of a bank account generally can procure bank statements by requesting them from the bank, the Court directed Defendants' counsel to "get the bank statements. Your client knows how." (Dkt. #67 at 44). But the records were not produced. At the December 15 Hearing, the Court discussed these records with Hoffman repeatedly, reminding him of the Court's directive that he "to go back and get them." (Dkt. #94 at 68:22). Hoffman indicated that he could not provide certain bank records because they were in the possession of the liquidators. (*Id.* at 68:22-70:10). But to the extent bank records existed that were not, Hoffman "fully accept[ed] that [Defendants] should track down every bank account statement that reflects activity in the account that [they] can get [their] hands on. [Defendants] do not dispute that and [they] are happy to do it." (*Id.* at 70:7-10; *see also id.* at 74:14-15 ("[Defendants] are not disputing that any bank statements [Defendants] have [they] should turn ... over even if I think they're irrelevant.")). The Court directly asked Hoffman whether all bank accounts had been

12

identified for Plaintiff, and Hoffman answered affirmatively, naming accounts at Coutts, Barclays, City National, and Regents banks. (*Id.* at 91:17-92:5). Hoffman further affirmed that "[e]very single bank account that [Defendants] could find in [its] system in the period of 2008 through present, I think was the timeframe, was produced." (*Id.* at 93:18-20). And he assured the Court that to the extent any records were inadvertently missed, such as the bank records from Regents Bank, Defendants would "have no issue with ... getting [their] own bank statements from the bank instead of just saying, oh, gee, they aren't in our possession. [Defendants] quite agree." (*Id.* at 94:8-10).

But Defendants never got their "bank statements from the bank," despite Hoffman's agreement with the Court that there was nothing to prevent Defendants from doing so. On February 20, 2016, Plaintiff advised the Court that the bank statements, among other documents, had not been produced. (Dkt. #129). And as of January 2, 2017, despite the imminent March 2017 trial date, Defendants' bank statements *still* had not been produced. (Dkt. #171). Indeed, as of the date of Plaintiff's last filing in this case, Defendants had *still* not produced Defendants' bank statements. (Pl. Str. Reply 1-2). The Court can come to no conclusion but that Defendants' failure to comply with the Court's multiple directives was willful.

Defendants' rebuttal arguments regarding these bank records are two-fold: First, Defendants argue that Plaintiff has misinterpreted the records' contents and exaggerated their import. (Def. Str. Opp. 2-3). Defendants explain that the funds in the SAE and SAFELA accounts were there exclusively

13

for Hoffman's "own business and income since he has no personal accounts," and included Hoffman's social security payments, funds held in escrow for a client, income from his consulting and legal services, and funds generated by films "unrelated to the Arrowhead Titles." (*Id.* at 3). Second, Defendants adopt a "no harm, no foul" stance, arguing that because Plaintiff "served subpoenas first and now has these records by response to those subpoenas, to which SAE consented," the records were never withheld by Defendants. (*Id.* at 2).

The Court is not persuaded. Taking Defendants' second argument first, the Court notes that Plaintiff's ultimate procurement of the bank records was *despite* Defendants' efforts, rather than because of them. And the Court's focus in evaluating the need for sanctions is on Defendants' conduct, not Plaintiff's; the fact that Plaintiff eventually procured the bank records it should have had years ago has nothing to do with Defendants' failure to comply with this Court's orders requiring Defendants to produce those bank records.

The Court rejects Defendants' first argument for much the same reason. Defendants were obligated to produce these bank records notwithstanding Defendants' estimation of their relevance. It matters little to the Court what Defendants contend the records do or do not show.[6] Defendants are

---

[6] The Court notes, however, that a review of the records' contents only bolsters the Court's sense that sanctions must be imposed here. As Plaintiff argues, the records demonstrate that Defendants had funds in accounts held in their names during the times when Defendants allegedly lacked the assets to (i) maintain the Zed One server and thereby records essential to this litigation; (ii) obtain special-purpose discovery counsel; and (iii) pay the sanctions award owed to Plaintiff. (*See* Goldin Decl. Ex. 17A-H). Defendants argue that these funds were used by Hoffman to "pay all his personal expenses including utilities, phone, cable, etc." (Def. Str. Opp. 3). And to some extent, that appears to be true. But the Court notes that many funds were expended on what it would deem luxury purchases, such as spa expenditures. (*See* Goldin Decl. Ex. 17A-

14

sanctioned here for their willful noncompliance with the Court's orders that the records be produced, which noncompliance Defendants have not disputed. (*See* Pl. Str. Br., Goldin Decl. Ex. 9, 13 (promising, in cover letter to discovery responses provided on January 25, 2017, to produce "SAFELA bank statements ... next week," while asserting within those very responses that all bank records already had been produced)). Defendants' arguments regarding the relevance of the bank records are themselves irrelevant.

### b.    Efficacy of Lesser Sanctions

In the September 16 Opinion, the Court considered the panoply of sanctions available under Rule 37. (*See* Dkt. #143 at 45). *See Arrowhead Capital Fin.*, 2016 WL 4991623, at *21. Incanting the litany of misconduct apparent from a review of the record in this case, the Court noted that measures short of sanctions had failed to compel Defendants' compliance: "As many times as the Court intervened, Defendants still refused to comply with the Court's discovery orders." (*Id.*). *Id.* The Court noted that it had considered entering default judgment against Defendants, but had decided that "an intermediate course of action [was] sufficient." (*Id.* at 46). *Id.* Rather than defaulting Defendants, the Court opted instead to (i) "preclude[e] Defendants from litigating the issue of personal jurisdiction"; (ii) "giv[e] a spoliation

---

H). And indeed, either way, this Court's orders ought to have taken priority. These were business accounts, held in Defendants' names, and they should have been used for business purposes, such as the payment of Defendants' expenses and obligations in this litigation. To be clear: The Court is not sanctioning Defendants on the basis of Defendants' budgetary failings. But these records do leave the Court, once again, with the distinct and troubling sense that it has been lied to, and that is worth noting.

instruction, as appropriate, on any claims that are ultimately submitted to the jury"; and (iii) impose a monetary sanction to "compensate Plaintiff for the expense of bringing Defendants' misconduct to the Court's attention and to ensure that Defendants comply with their discovery obligations going forward." (*Id.* at 45-47). *Id.* It was the Court's hope that such "intermediate steps" would "give Plaintiff a fair opportunity to present its case to the ultimate finder of fact." (*Id.* at 46). *Id.*

As is now evident, the Court was incorrect; an intermediate course of action was not sufficient. Despite the sanctions imposed by the September 16 Opinion and November 2 Order, Defendants' conduct has not changed. Defendants have never produced the bank records and other accounting documents that Plaintiff has sought for years, and which the Court has repeatedly ordered Defendants to produce, *and* which Defendants have conceded are within their powers to procure. Defendants have failed to retain special purpose counsel for discovery, as ordered by the Court. (Dkt. #181 at 2-8). And Defendants have not done so despite this Court's orders to the contrary. The Court has exhausted its arsenal; no lesser sanction could suffice to deter Plaintiff's misconduct.

### c.   Duration of Noncompliance

This Court was first made aware of Defendants' failure to comply with their discovery obligations on September 21, 2015. (Dkt. #55). One year later, at the time of the Court's September 16 Opinion, Defendants' misconduct had not ceased. (Dkt. #143). *See generally Arrowhead Capital Fin.*, 2016 WL

4991623. Indeed, it has continued through at least March 25, 2017, the date of the last filing in this case. (Dkt. #193). If "more than enough time ha[d] elapsed for the Court to impose harsh sanctions" as of September 16, 2016, the same is all the more true today. (Dkt. #143 at 46). *Arrowhead Capital Fin.*, 2016 WL 4991623, at *21 (citing *Agiwal*, 555 F.3d at 303). Defendants' prior noncompliance notwithstanding, Defendants have failed to comply with the orders in that Opinion, and other orders issued since, in the more than six months that have elapsed. A period of six months is sufficient to justify the imposition of sanctions here. *See Agiwal*, 555 F.3d at 303 (affirming dismissal of action under Rule 37 on the basis of plaintiff's defiance of court orders "over a span of approximately six months").

### d. Warnings

This Court has repeatedly warned Defendants that it would impose sanctions if their noncompliance persisted. The Court did so prior to the relevant period, in the conference held on October 5, 2015. (Dkt. #67 at 33-35). The Court did so again in the September 16 Opinion, wherein the Court specifically referenced the possibility of "entering default judgment against Defendants on all counts in the Amended Complaint" for Defendants' "willful efforts to derail the discovery process," but opted instead for an intermediate course of action that would still give Plaintiff "a fair opportunity to present its case." (Dkt. #143 at 45-46). *Arrowhead Capital Fin.*, 2016 WL 4991623, at *21. And at the January 18 conference, Plaintiff explained why Defendants' continued misconduct had robbed Plaintiff of this opportunity. (Dkt. #181).

The Court explored Plaintiff's sanctions argument on the record, with Hoffman and counsel for the parties, and the Court set a briefing schedule for Plaintiff's sanctions motion. (*Id.*). Notably, even since then, Defendants failed to comply with the Court's orders to provide Plaintiffs with the outstanding bank records and other discovery.

Defendants contend they have not been given advance warning of a terminating sanction, but such a claim cannot be countenanced in light of the foregoing facts. Defendants have been warned; they cannot now complain because they failed to take seriously the warnings they were given. Even allowing that the September 16 Opinion referenced the possibility of default judgment as a sanction only with regard to Defendants' pre-December 2015 noncompliance, that reference gave Defendants notice that such a sanction could be imposed if an intermediate sanction failed and Defendants' misconduct persisted. *See Guggenheim Capital*, 722 F.3d at 452 (holding that "district court's warnings — which mentioned sanctions, but never the phrase 'default judgment' — were sufficient" because court warned defendant "regularly and often"); *see also id.* at 453 (finding sufficiency of notice to defendant was "reinforced" by fact that defendant "was not a *pro se* litigant in the traditional sense," since defendant "was counseled for most of the proceedings below"). Plaintiff's motion to strike SAFELA's answer and to enter a default judgment must be granted.

## B.  Additional Sanctions Are Warranted

Rule 37 requires that the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees," that were caused by Defendants' failure to comply with the Court's discovery orders, "unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C). Absent a showing of substantial justification or injustice, therefore, this Court must order Defendants to pay the reasonable expenses caused by their noncompliance.  *See Novak* v. *Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) (per curiam) (declining to hold that "Rule 37(b)(2) expenses are mandatory," but finding that "[t]he use of the word 'shall' certainly suggests that an award of expenses is mandatory unless one of the two exceptions — substantial justification or other circumstances — applies"); *see also Underdog Trucking, L.L.C.* v. *Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) ("Rule [37] sets forth a [rebuttable] presumption in favor of awarding sanctions against a party that complies with discovery demands after the filing of a motion to compel.").  Therefore, Plaintiff is directed to advise the Court on or before **May 16, 2017,** what expenses Plaintiff incurred as a result of Defendants' misconduct subsequent to the December 15 Hearing.  Defendants may oppose Plaintiff's expense determination on or before **May 23, 2017**.  This opposition should address the reasonableness of Plaintiff's calculation and the applicability of any exception to Rule 37(b)(2).  *See Jay* v. *Spectrum Brands Holdings, Inc.*, No. 13 Civ. 8137 (LTS) (DF), 2015 WL 6437581, at *12 (S.D.N.Y.

Oct. 20, 2015) ("Once it is shown that a discovery order was violated, the disobedient party has the burden of showing that an award of the expenses caused by the violation is not warranted.").

## C.  Plaintiff's Motion for Attachment, Restraint, and Turnover

In light of the foregoing, the Court suspects that the remedies sought by Plaintiff may differ slightly from those requested in Plaintiff's original motion. For example, because the Court has now entered judgment against both Defendants, and will enter a final judgment to that end consistent with Federal Rule of Civil Procedure 54, the Court suspects Plaintiff may wish to abandon its claim for pre-judgment relief under Federal Rule of Civil Procedure 64 and focus instead on its arguments under Federal Rule of Civil Procedure 69. For this reason, the Court dismisses Plaintiff's motion without prejudice to its renewal.

Because the parties have already had an opportunity to brief this issue, the Court will herein set an expedited briefing schedule for any renewed motion that Plaintiff may wish to file. To the extent Plaintiff seeks to renew arguments previously made, however, such arguments need not be briefed anew; Plaintiff can simply advise the Court as such. Plaintiff may renew its motion for turnover, attachment, and/or restraint, as appropriate in light of this Opinion, on or before **May 9, 2017**. Defendant must oppose Plaintiff's motion on or before **May 16, 2017**. Plaintiff may reply, *as needed*, by **May 23, 2017.**

**CONCLUSION**

For the reasons outlined above, Plaintiff's motion to strike SAE's answer and to enter default judgment for Plaintiff is DENIED. Plaintiff's motion to strike SAFELA's answer and enter default judgment for Plaintiff is GRANTED. Plaintiff's motion for turnover, attachment, and restraint is DENIED WITHOUT PREJUDICE. The Clerk of Court is directed to terminate the motions pending at docket entries 165 and 176.

     SO ORDERED.

Dated:     May 2, 2017
           New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge