| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------X<br><br>ARROWHEAD CAPITAL FINANCE, LTD.,<br><br>                                 Plaintiff,<br><br>                 v.<br><br>SEVEN ARTS ENTERTAINMENT, INC., and<br>SEVEN ARTS FILMED ENTERTAINMENT<br>LOUISIANA LLC,<br><br>                                Defendants.<br>------------------------------------------------------X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: August 8, 2017<br><br>14 Civ. 6512 (KPF)<br><br>OPINION AND ORDER |

KATHERINE POLK FAILLA, District Judge:

On May 2, 2017, the Court issued an Opinion and Order (the "May 2 Opinion") granting Plaintiff's motion to strike the answer of Defendant Seven Arts Entertainment Louisiana, LLC ("SAFELA") and to enter the judgment against it that was sought in Plaintiff's First Amended Complaint (the "Complaint"). The Court also imposed monetary sanctions for the interminable misconduct of both Defendants, SAFELA and Seven Arts Entertainment, Inc. ("SAE").

On May 9, 2017, Plaintiff renewed its motion for post-judgment relief pursuant to Federal Rule of Civil Procedure 69. Plaintiff's counsel also filed an affidavit advising the Court of the fees and costs Plaintiff had incurred as a result of Defendants' misconduct subsequent to the Court's December 15, 2015 contempt hearing. Defendants did not oppose either filing. For the

reasons set forth in the remainder of this Opinion, Plaintiff's applications are granted.

## BACKGROUND

The Court presumes familiarity with the factual and procedural background of this litigation, which was described in detail in the Court's September 16, 2016 Opinion (Dkt. #143) and in the May 2 Opinion (Dkt. #195). *See Arrowhead Capital Fin., Ltd.* v. *Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2017 WL 1787819, at *1-4 (S.D.N.Y. May 2, 2017); *Arrowhead Capital Fin., Ltd.* v. *Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2016 WL 4991623, at *1-9 (S.D.N.Y. Sept. 16, 2016). The Court hereby incorporates those factual statements by reference, and will focus its attention in this section on the developments in the case subsequent to the issuance of the May 2 Opinion.

In the May 2 Opinion, the Court set briefing schedules for (i) Plaintiff's reasonable fees and costs and (ii) Plaintiff's Rule 69 motion. *See Arrowhead Capital Fin.*, 2017 WL 1787819, at *8. In accordance with these schedules, Plaintiff filed on May 16, 2017, (i) an affidavit of attorney Barry L. Goldin regarding the fees and costs incurred by Plaintiff as a result of Defendants' post-December 15, 2015 misconduct ("Goldin Aff." (Dkt. #199)); and (ii) a renewed motion for Rule 69 relief ("Pl. Br." (Dkt. #197)). Defendants did not respond to either filing. Thus, on May 24, 2017, Plaintiff filed (i) a notice indicating that its fee calculation was unopposed ("Pl. Notice" (Dkt. #201)), and (ii) its reply in further support of its renewed Rule 69 motion ("Pl. Reply" (Dkt. #200)).

During the pendency of this briefing period, on May 9, 2017, Defendants appealed the May 3, 2017 judgment against SAFELA and the September 16, 2016 judgment against SAE. (Dkt. #198).

**DISCUSSION**

**A.     The Sanctions Award**

**1.     Applicable Law**

Federal Rule of Civil Procedure 37 requires a court to "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees," that were caused by the party's failure to comply with the court's discovery orders, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).[1] Absent a showing of substantial justification or injustice, therefore, this Court must order Defendants to pay the reasonable expenses caused by their noncompliance. *See Novak* v. *Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) (per curiam) (declining to hold that "Rule 37(b)(2) expenses are mandatory," but finding that "[t]he use of the word 'shall' certainly suggests that an award of expenses is mandatory unless one of the two exceptions — substantial justification or other circumstances — applies"); *see also Underdog Trucking, L.L.C.* v. *Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) ("Rule [37] sets forth a [rebuttable]

---

[1]     The Court's imposition of sanctions on Defendants was pursuant to Rule 37, though it had similar authority to impose the limited sanction it did impose under its inherent powers. *See generally Goodyear Tire & Rubber Co.* v. *Haeger*, — U.S. —, 137 S. Ct. 1178, 1186 (2017); *Va. Props., LLC* v. *T-Mobile Ne. LLC*, — F.3d —, No. 16-2973, 2017 WL 3197539, at *2 (2d Cir. July 28, 2017).

3

presumption in favor of awarding sanctions against a party that complies with discovery demands after the filing of a motion to compel.").

## 2. Plaintiff's Reasonable Fees

In the May 2 Opinion, the Court relied on Rule 37 in ordering Defendants to pay Plaintiff's reasonable expenses, including attorney's fees, that were incurred as a result of Defendants' failure to comply with the Court's discovery orders. *Arrowhead Capital Fin.*, 2017 WL 1787819, at *8. The Court gave Defendants the opportunity to explain why their failure was substantially justified or why other circumstances made an award of expenses unjust, but Defendants elected not to do so. *See id.* (citing *Jay* v. *Spectrum Brands Holdings, Inc.*, No. 13 Civ. 8137 (LTS) (DF), 2015 WL 6437581, at *12 (S.D.N.Y. Oct. 20, 2015) ("Once it is shown that a discovery order was violated, the disobedient party has the burden of showing that an award of the expenses caused by the violation is not warranted.")). The Court is left therefore to determine the reasonability of Plaintiff's expense calculation.

Both the Supreme Court and Second Circuit "have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea* v. *Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)) (citing *Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010)). A presumptively reasonable fee is "'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum

4

necessary to litigate the case effectively.'" *Simmons* v. *N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cty. of Albany*, 493 F.3d 110, 118 (2d Cir. 2007), *opinion amended and superseded sub nom. Arbor Hill*, 522 F.3d 182). "The reasonableness of hourly rates [is] guided by the market rate '[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation,'" and the relevant community for purposes of this case is this District. *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund* v. *Installations of Am., Inc.*, No. 15 Civ. 8316 (PAE), 2017 WL 384694, at *5 (S.D.N.Y. Jan. 27, 2017) (quoting *Blum* v. *Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also Arbor Hill*, 522 F.3d at 190-91. And with regard to reasonable hours, "[c]ourts are obliged to exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund*, 2017 WL 384694, at *5 (quoting *Kirsch* v. *Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).

Here, Plaintiff requests that the Court order Defendants to pay a total of $16,340.26 to compensate Plaintiff for its reasonable expenses incurred as a result of Defendants' misconduct subsequent to December 15, 2015. (Goldin Aff. ¶ 10). Plaintiff's counsel indicates that Defendants' misconduct required his expenditure of 63.2 work hours, and that his hourly rate is $250 per hour. (*Id.* at ¶¶ 6-7). Thus, Plaintiff incurred a total sum of $15,800.00 in attorney's fees. (*Id.* at ¶ 8). Additionally, Plaintiff's counsel incurred costs in the amount of $540.26. (*Id.* at ¶ 9).

5

The Court hereby finds that Plaintiff's counsel's expense request is reasonable. The Court has found previously that Plaintiff's counsel's hourly rate is a reasonable one (*see* Dkt. #153, 157), and still finds the same. With regard to Plaintiff's counsel's hours worked, the Court finds that Plaintiff's counsel has not requested compensation for hours that are excessive, redundant, or otherwise unnecessary. In this regard, the Court is mindful of Plaintiff's counsel's past representations to the Court that he does not bill for hours worked on administrative tasks, and notes that counsel has not billed for any travel time. (Dkt. #157).

Defendants have not raised any issues with Plaintiff's counsel's fee calculation, and the Court has not found any upon its own review. Therefore, Defendants are ordered to compensate Plaintiff for the $16,340.26 in reasonable expenses incurred by Plaintiff as a result of Defendants' misconduct subsequent to December 15, 2015.

**B.      Rule 69 Relief**

   **1.      Applicable Law**

The relevant provision of Rule 69 provides that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise." Fed. R. Civ. P. 69(a)(1). The Rule also requires that "[t]he procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, [though] a federal statute governs to the extent it applies." *Id.*

Here, because there is no applicable federal statute, the Court must look to the law of New York State, within which state the Court is located. Article 52 of New York's Civil Practice Law and Rules governs the enforcement and collection of money judgments in New York. *See* N.Y. C.P.L.R. §§ 5201-53; *Tire Eng'g & Distrib. L.L.C.* v. *Bank of China Ltd.*, 740 F.3d 108, 110 (2d Cir.), *certified question accepted,* 22 N.Y.3d 1113 (2014), *and certified question withdrawn,* 22 N.Y.3d 1152 (2014), *and certified question answered sub nom. Motorola Credit Corp.* v. *Standard Chartered Bank,* 24 N.Y.3d 149 (2014); *Koehler* v. *Bank of Bermuda Ltd.*, 544 F.3d 78, 85 (2d Cir.), *certified question accepted,* 11 N.Y.3d 801 (2008), *and certified question answered,* 12 N.Y.3d 533 (2009). Plaintiff here seeks relief under Section 5225 of this statute. (*See* Pl. Br. 1-4; Dkt. #166).[2]

Where property is in possession of a judgment debtor, Section 5225 permits a court,

> [u]pon motion of the judgment creditor, upon notice to the judgment debtor, [and] where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, ... [to] order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as

---

[2] Plaintiff's original briefing also sought relief under Sections 5229 and 6201. (*See* Dkt. #166). However, because judgment has now been entered against both Defendants, relief under these sections is no longer available to Plaintiff. *See* N.Y. C.P.L.R. § 5229 ("In any court, *before a judgment is entered*, upon motion of the party in whose favor a verdict or decision has been rendered, the trial judge may order examination of the adverse party and order him restrained[.]" (emphasis added)); *Koehler* v. *Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 537 (2009) ("CPLR article 52 governs the enforcement of money judgments and orders directing the payment of money. By contrast, *prejudgment* attachment is governed by CPLR article 62." (emphasis added)).

>is of sufficient value to satisfy the judgment, to a designated sheriff.

N.Y. C.P.L.R. § 5225(a). And where property is not in the possession of a judgment debtor, Section 5225 "allows a judgment creditor to commence a [special] proceeding to order a third party to turn over the judgment debtors' assets." *Tire Eng'g*, 740 F.3d at 110; *see also* N.Y. C.P.L.R. § 5225(b).

Section 5201, "'[t]he first section of Article 52[,] describes the assets that New York law has made subject to enforcement, and thus available to judgment creditors' seeking to collect under § 5225." *Mitchell* v. *Garrison Protective Servs., Inc.*, 579 F. App'x 18, 21 (2d Cir. 2014) (summary order) (quoting *All. Bond Fund, Inc.* v. *Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16, 20 (2d Cir. 1999)). This provision allows that "[a] money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment." N.Y. C.P.L.R. § 5201(b). Such property need not be located in New York; "a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property" if the defendant "is a judgment debtor or a garnishee." *Koehler*, 12 N.Y.3d at 541. And "[w]here property ... is evidenced by a negotiable instrument for the payment of money, a negotiable document of title or a certificate of stock of an association or corporation, the instrument, document or certificate shall be treated as property capable of

delivery and the person holding it shall be the garnishee." N.Y. C.P.L.R. § 5201(c)(4).

**2. Plaintiff's Requested Relief**

Plaintiff has moved this Court under Rule 69 for an order requiring Defendants to turn over and deliver to Plaintiff's counsel:

> (i) the stock certificate(s) evidencing ownership of 4,500,000 shares of The Movie Studio, Inc. which have been acquired or owned by SAE, duly endorsed for transfer, whereupon they may be attached by [Plaintiff]; and
>
> (ii) the certificates evidencing and other indicia of ownership of all membership interests in [SAFELA,] which have been acquired or owned by SAE, constituting not less than 60% of the membership interests of SAFELA, all duly endorsed for transfer, whereupon they may be attached by [Plaintiff]; and
>
> (iii) the Multi-Picture Distribution Agreement between SAE and SAFELA dated as of October 1, 2013 (the "Multi-Picture Distribution Agreement") and all rights of and obligations owed from time to time to SAE or to SAFELA thereunder or with respect thereto, whereupon they may be attached by [Plaintiff].

(Pl. Br. 2). Plaintiff also requests that the Court restrain Defendants and their associates from

> (i) pledging, hypothecating, selling, transferring or otherwise disposing of any right, title or interest in the 4,500,000 shares of The Movie Studio which have been acquired or owned by SAE;
>
> (ii) amending or otherwise adversely affecting any right, title or interest in or with respect to membership interests in SAFELA which have been acquired or owned by SAE; and
>
> (iii) amending or otherwise adversely affecting any right, title or interest in or with respect to rights of or

> obligations owed from time to time to SAE or to SAFELA under the Multi-Picture Distribution Agreement.

(*Id.*). And finally, Plaintiff requests that the Court order Defendants

> to put a stop transfer order on their books and records as to, and restraining transfer[,] pledge, hypothecation, sale or other transfer (otherwise than to [Plaintiff or its designee]) of any right, title or interest in or to, [i] shares of The Movie Studio, Inc. which have been acquired or owned by SAE, [ii] membership interests in SAFELA which have been acquired or owned by SAE, or [iii] any right or interest in or proceeds from time to time under the Multi-Picture Distribution Agreement.

(*Id.* at 2-3). Defendants have not opposed Plaintiff's requests. (*See* Pl. Reply 1). Defendants have likewise not represented that the property Plaintiff seeks is not in their possession. Accordingly, the Court considers whether it may order the delivery of this property under Rule 69 and N.Y. C.P.L.R. § 5225(a).

### 3. Defendants Must Turn Over the Property Plaintiff Seeks

The property Plaintiff seeks is "property which could be assigned or transferred." *See* N.Y. C.P.L.R. § 5201. Plaintiff requests that Defendant turn over (i) the "stock certificate(s) evidencing ownership of 4,500,000 shares of The Movie Studio, Inc." that have been acquired or are owned by SAE; (ii) the "certificates evidencing and other indicia of ownership of all membership interests in [SAFELA,] which have been acquired or owned by SAE"; and (iii) "the Multi-Picture Distribution Agreement … and all rights of and obligations owed from time to time to SAE or to SAFELA thereunder or with respect thereto." (Pl. Br. 2). New York state law appears to support Plaintiff's claim that stock certificates are assignable, transferrable property for purposes of Section 5201. *See, e.g., Koehler*, 544 F.3d at 85 ("We assume, without

deciding at this juncture, that the stock [plaintiff] sought was property ... that would be subject to judgment enforcement, under N.Y. C.P.L.R. [§] 5201[.]"); *Koehler*, 12 N.Y.3d at 541 (treating stock as property the turnover of which court can order pursuant to Section 5225); *Gallant* v. *Kanterman*, 671 N.Y.S.2d 50, 53 (1st Dep't 1998) ("Under CPLR [§] 5201(c)(4), a stock certificate is 'property capable of delivery,' and therefore subject to enforcement of a money judgment."); *Payne* v. *Garnett McKeen Lab., Inc.*, 648 N.Y.S.2d 137, 137 (2d Dep't 1996) (characterizing stock as intangible property subject to § 5201(c)'s directives regarding identity of proper garnishee). And because Defendants offer no argument to the contrary, the Court finds as much.

The same is true with regard to the certificates demonstrating SAE's ownership of SAFELA and the rights of SAE and SAFELA pursuant to the Multi-Picture Distribution Agreement. New York law is clear that such ownership interests and contract rights are "property" as the term is defined in Section 5201. *See, e.g., Chem. Bank* v. *Haseotes*, No. 93 Civ. 2846 (LMM), 1994 WL 132380, at *1 (S.D.N.Y. Apr. 12, 1994) (directing defendant pursuant to §§ 5225 and 5233 to turn over, among other things, all documents evidencing defendant's ownership interest in a limited partnership and a realty business); *Hotel 71 Mezz Lender LLC* v. *Falor*, 14 N.Y.3d 303, 314 (2010) ("[T]he intangible property plaintiff sought to attach — defendants' ownership/ membership interests in 22 out-of-state limited liability companies — is akin to intangible contract rights, and is clearly assignable and transferable."); *ABKCO Indus., Inc.* v. *Apple Films, Inc.*, 39 N.Y.2d 670, 674 (1976) (holding that

11

interests under a licensing agreement "constituted property," which "was attachable because concededly it was assignable"); *Sirotkin* v. *Jordan, LLC*, 35 N.Y.S.3d 443, 445 (2d Dep't 2016) ("A membership interest in a limited liability company is 'clearly assignable and transferrable,' and, therefore, such interest is 'property' for purposes of CPLR article 52."); *TD Bank, N.A.* v. *S. Shore Motor Grp., Inc.*, 953 N.Y.S.2d 554 (Sup. Ct. 2012) (table) ("By virtue of the judgment held by [plaintiff] ... against defendant ... , any monies due the judgment-debtors from, or in possession of third parties, including receivables and ownership interests, constitute property which is subject to the lien of the judgment and execution thereon."); *Jackson Hewitt Inc.* v. *Adams*, 880 N.Y.S.2d 873 (Sup. Ct. 2009) (table) (same). *But see Born to Build, L.L.C.* v. *Saleh*, 988 N.Y.S.2d 521 (Sup. Ct. 2014) (table) ("[A]t best, a creditor, such as the plaintiff, may only obtain an interest in a member's share of the profits and losses of a limited liability company, not the membership interest itself."). Again, Defendants have not argued otherwise.

And it is of no moment that these assets may ultimately prove worthless: "If from the judgment creditor's point of view the asset is worth pursuing as a matter of economics, [New York law] authorizes the pursuit notwithstanding the contingent nature of the asset, and even though nothing may come of the chase." *All. Bond Fund*, 190 F.3d at 23 (internal quotation marks omitted) (quoting David D. Siegel, *Practice Commentaries* § C5225:5 (McKinney 1997)); *see also Supreme Merch. Co.* v. *Chem. Bank*, 70 N.Y.2d 344, 349-50 (1987) (holding that the fact of value or lack thereof is irrelevant to attachment;

"[d]ispositive instead is whether such an interest has potential economic value to the creditor"). The "stock certificate(s) evidencing ownership of 4,500,000 shares of The Movie Studio, Inc." that have been acquired or are owned by SAE; the "certificates evidencing and other indicia of ownership of all membership interests in [SAFELA,] which have been acquired or owned by SAE"; and "the Multi-Picture Distribution Agreement ... and all rights of and obligations owed from time to time to SAE or to SAFELA thereunder or with respect thereto" are "property" for purposes of Article 52.

This property must be turned over to Plaintiff pursuant to § 5225(a). Defendants have not disputed that this property is in their possession; they have in fact implied the opposite, that the property is in their possession, but worthless. (*See* Dkt. #168; *see also* Dkt. #155 (joint letter in which Defendants agree to deliver this property to Plaintiff)). The value of the property matters not at all to the Court. Defendants must either (i) pay Plaintiff enough money to satisfy the judgment and the sums owed pursuant to the Court's sanctions awards, plus applicable interest, or (ii) turn over the personal property Plaintiff seeks, or so much of it as is of sufficient value to satisfy the judgment.[3]

Additionally, in light of Defendants'

> prior efforts at avoiding any satisfaction of the judgments against them[,] ... the Court further orders, pursuant to Rule 69 ... and N.Y. CPLR § 5222 — effective upon the service or, alternatively, upon the giving of reasonable notice of this Order and of any

---

[3] The Court understands that Defendants have not paid, and therefore still owe, the entire sum of (i) the funds owed pursuant to the December 2006 note, (ii) the October 2012 New York state court judgment, and (iii) this Court's November 2, 2016 sanctions order (Dkt. #167 ¶¶ 6-9), in addition to the sanctions awarded in this Opinion.

13

> additional notice(s) required to be provided pursuant to N.Y. CPLR § 5222 — that [i] [Defendants are] hereby forbidden to make or suffer any sale, assignment, transfer or interference with any property ... in which [they] ha[ve] an interest, real or inchoate, except upon direction of the Court, until [Plaintiff's] judgments are satisfied in full or vacated; and [ii] any other person or entity who owes a debt to [Defendants] or is in possession or custody of property in which he or she knows [Defendants have] an interest, or a particular debt or property if specified by counsel for [Plaintiff] in a notice provided, is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than [Plaintiff], except pursuant to an order of this Court, until the ... judgment ... is satisfied.

*Motorola Credit Corp.* v. *Uzan,* 739 F. Supp. 2d 636, 642 (S.D.N.Y. 2010); *see also* N.Y. C.P.L.R. § 5222(b) (describing permissible scope of restraining notice).

## C. The Impact of Defendants' Appeal

The Court does not believe that its right to order this relief or to define the amount owed pursuant to the May 2 Opinion's sanctions award is impacted by Defendants' pending appeal. Indeed, Defendants have not argued that it is, and Plaintiff has argued that it is not. The Court agrees.

The Court is permitted to grant Plaintiff relief pursuant to Rule 69 notwithstanding Defendants' appeal. It is well-established that "[f]ederal courts have the authority to enforce their judgments, and retain jurisdiction over supplementary proceedings to do so." *Deflora Lake Dev. Assocs., Inc.* v. *Hyde Park,* No. 13 Civ. 4811 (CS), 2016 WL 7839191, at *1 (S.D.N.Y. June 9, 2016) (citing *Peacock* v. *Thomas,* 516 U.S. 349, 356 (1996)), *aff'd,* No. 16-2214-cv, 2017 WL 1732045 (2d Cir. May 3, 2017) (summary order), *and aff'd,* No. 15-

2653-cv, 2017 WL 1735245 (2d Cir. May 3, 2017) (summary order); *accord AXA Versicherung AG* v. *N.H. Ins. Co.*, 962 F. Supp. 2d 509, 512 (S.D.N.Y. 2013) (citing *EM Ltd.* v. *Republic of Argentina*, 695 F.3d 201, 208 (2d Cir. 2012)) ("Jurisdiction to hear ancillary disputes relating to execution and enforcement of judgments is an inherent part of a court's jurisdiction over the underlying case."). Thus, "the pendency of [Defendants'] appeal does not divest the Court of power to enforce its judgment." *Deflora Lake Dev. Assocs.*, 2016 WL 7839191, at *1 n.3 (citing *In re Prudential Lines, Inc.*, 170 B.R. 222, 243 (S.D.N.Y. 1994) ("Although a district court may not alter or enlarge the scope of its judgment pending appeal, it does retain jurisdiction to enforce the judgment.")). Nor does it excuse Defendants from complying therewith. *See United States* v. *Pescatore*, 637 F.3d 128, 144 (2d Cir. 2011) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." (emphasis omitted) (quoting *Maness* v. *Meyers*, 419 U.S. 449, 458 (1975))).

The Court believes it is also permitted to determine the amount of reasonable expenses that are owed to Plaintiff pursuant to the May 2 Opinion. In reaching this conclusion, the Court bears in mind that "[a]pplication of the general rule by which a district court is divested of power upon the filing of a notice of appeal 'must be faithful to the principle of judicial economy from which it springs,'" *Hoffenberg* v. *United States*, No. 00 Civ. 1686 (RWS), 2004 WL 2338144, at *3 (S.D.N.Y. Oct. 18, 2004) (quoting *United States* v. *Rodgers*,

101 F.3d 247, 251 (2d Cir. 1996)), and notes that "it is well recognized that a district court retains power to perform certain functions in aid of an appellate court's jurisdiction notwithstanding the existence of an appeal," *id.* (citing *Leonhard* v. *United States*, 633 F.2d 599, 609-10 (2d Cir. 1980) ("Once a proper appeal is taken, the district court may generally take action only in aid of the appeal or to correct clerical errors as allowed by the Federal Rules of Civil (or Criminal) Procedure.")). *See also Satcom Int'l Grp. PLC* v. *Orbcomm Int'l Partners, L.P.*, 55 F. Supp. 2d 231, 233-34 (S.D.N.Y. 1999) ("Where the appeal is from a final judgment, the district court can take only limited action during pendency of the appeal. For example, the district court is free to ... take actions in aid of the appeal." (citations omitted)). Here, determining the amount of reasonable expenses that were awarded pursuant to the May 2 Opinion clarifies the Opinion's scope "in aid of" Defendant's appeal therefrom.

**CONCLUSION**

For the reasons outlined above, Defendants are therefore ORDERED to compensate Plaintiff for the $16,340.26 in reasonable expenses that Plaintiff incurred as a result of Defendants' misconduct subsequent to December 15, 2015. Plaintiff's renewed motion for relief under Federal Rule of Civil Procedure 69 is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: August 8, 2017
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge